IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**SANDRA MOLLENKOPF**,                                   Case No. 09-346-KI

              Plaintiff,

                                             OPINION AND ORDER

     vs.

**MICHAEL J. ASTRUE**,
Commissioner, Social Security Administration,

              Defendant.


       Rory Linerud
       P. O. Box 1105
       Salem, Oregon  97308

             Attorney for Plaintiff

       Dwight C. Holton
       Interim United States Attorney
       District of Oregon

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

David J. Burdett
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Sandra Mollenkopf brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## BACKGROUND

Plaintiff filed an application for SSI on July 19, 2006 alleging disability beginning January 1, 2001.  The application was denied initially and upon reconsideration.  After a timely request for a hearing, plaintiff, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on October 22, 2008.

On December 17, 2008, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on February 9, 2009.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and

416.920(c). If the claimant does not have a severe impairment or combination of impairments,

disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine

whether the impairment is equivalent to one of a number of listed impairments that the

Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R.

§§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments,

the claimant is conclusively presumed to be disabled. If the impairment is not one that is

presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the

impairment prevents the claimant from performing work which the claimant performed in the

past. If the claimant is able to perform work which he performed in the past, a finding of "not

disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner

proceeds to the fifth and final step to determine if the claimant can perform other work in the

national economy in light of his age, education, and work experience. The burden shifts to the

Commissioner to show what gainful work activities are within the claimant's capabilities. Parra,

481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform

other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d

1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

After evaluating the record and plaintiff's testimony, the ALJ concluded that plaintiff

suffered from diabetes mellitus, right knee degenerative joint disease, obesity, and asthma as

severe impairments.  The ALJ did not find that these impairments met or medically equaled the

requirements of any of the impairments listed in Appendix 1, Subpart P of part 404 of the Social

Security Regulations.  Additionally, the ALJ concluded plaintiff's right wrist mild carpal tunnel

syndrome did not rise to the level of a severe impairment, although the ALJ considered the issue

in forming plaintiff's residual functional capacity ("RFC").  The ALJ treated plaintiff's right

shoulder/arm pain similarly.

The ALJ determined that plaintiff could perform light work, with limitations on standing

and walking for two hours per eight-hour day.  Additionally, the ALJ concluded plaintiff could

push and pull no more than 20 pounds occasionally and 10 pounds frequently.  She could only

occasionally use foot pedals and had occasional postural limitations.  Finally, the ALJ

determined that plaintiff must avoid repetitious gripping or forceful twisting and must avoid

exposure to respiratory irritants.

Upon receipt of testimony from a Vocational Expert ("VE"), the ALJ concluded plaintiff

could not perform her past work, but could perform sedentary work as a final assembler,

telephone quotation clerk, and document sorter.

Page 5 - OPINION AND ORDER

**FACTS**

Plaintiff, who was 39 years old on the date she filed her application, alleges disability beginning January 1, 2001, due to right knee pain, obesity, diabetes, joint problems, asthma, and severe pain.  Plaintiff reported in her application for benefits that she had completed the ninth grade, but testified that she only had a third-grade education.  She has worked as a caregiver, a truck driver, and a fast food worker.

Plaintiff's medical record begins in March of 2006.  She obtained medical care from the Emergency Department at Cottage Grove Community Hospital almost every month and sometimes two or three times in one month from March of 2006 through December 14, 2007.  She requested medical treatment for abdominal pain, colds, ear pain, vomiting and diarrhea, a rash, dental pain, back pain, knee pain, and wrist pain.  She went to the Emergency Department when she stubbed her toe on a curb, injured her thumb cleaning her oven, and suffered knee pain when she fell down the stairs, foot pain when she dropped her television on her foot, and right arm pain on three occasions from one injection she received at the Emergency Department.

Plaintiff also obtained an evaluation in February and March of 2008 for her right arm pain as a result of the injection.  An electromyography (EMG) to evaluate the "suspected right radial nerve injury" "revealed no evidence of denervation."  Tr. 284.  Steven C. Goins, M.D., opined that there was "a mild abnormality of the right median nerve localized to the wrist segment. With the presence of appropriate clinical symptoms, this finding could be consistent with carpal tunnel syndrome."  Id.  Dr. Goins reported to Raymond N. Englander, M.D., that the "nerve conduction studies revealed" what  "might be consistent with carpal tunnel syndrome, but the finding is relatively mild."  Tr. 279.  There were "no abnormalities" with the "right radial nerve."

Page 6 - OPINION AND ORDER

Id.  At this point, in February 2008, she weighed 267 pounds.  During a follow-up with Dr.

Englander one month later, she weighed 270 pounds.  Dr. Englander diagnosed "some sort of

radial nerve irritation without permanent injury."  Tr. 278.

**DISCUSSION**

I.       Plaintiff's Credibility

Plaintiff challenges the ALJ's credibility assessment.  When deciding whether to accept

the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In

the first stage, the claimant must produce objective medical evidence of one or more impairments

which could reasonably be expected to produce some degree of symptom.  Lingenfelter v.

Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the

impairment could reasonably be expected to cause the severity of the symptom, but only to show

that it could reasonably have caused some degree of the symptom.  In the second stage of the

analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of

the symptoms.  If there is no affirmative evidence of malingering, the ALJ may reject the

claimant's testimony "only by offering specific, clear and convincing reasons for doing so."  Id.

The ALJ reported a number of exaggerated statements plaintiff made and he commented

on her drug-seeking behavior.  Specifically, the ALJ reported that plaintiff testified she had been

diagnosed with bilateral carpal tunnel and that she "cannot even pick up a glass of water, and that

she has difficulty reaching back for personal hygiene."  Tr. 10.  The neurologist's reports,

however, indicated that the EMG was normal and that testing indicated a suggestion of possible

mild carpal tunnel syndrome on the right wrist only.  Additionally, the ALJ remarked that

although plaintiff could afford to spend $100 a month or so on her smoking habit, which required

Page 7 - OPINION AND ORDER

one pack of cigarettes a day, she claimed she could not pay for her diabetes medication.

Furthermore, although plaintiff reported that because she could not afford her diabetes

medication her diabetes was out of control, treatment notes reflected she controlled her blood

sugar levels by diet in 2007.  Finally, the ALJ pointed to the number of times plaintiff visited the

emergency department for fairly small problems and referred to one occasion when plaintiff was

extremely difficult until she was offered narcotic pain medication.

The ALJ also commented on the absence of objective medical evidence to support some

of plaintiff's complaints.  For example, plaintiff testified about having problems with her

eyesight, but she never complained about it to any provider.[1]  She also complained about asthma

to the ALJ, but no provider treated her for asthma symptoms and plaintiff continued to smoke a

pack of cigarettes a day.  She also reported experiencing swelling in her hands and feet, but no

provider indicated such a problem in their examinations of her.  Although the ALJ cannot reject

subjective pain testimony solely because it was not fully corroborated by objective medical

evidence, medical evidence is still a relevant factor in determining the severity of the pain and its

disabling effects.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ also noted that both plaintiff and her husband indicated plaintiff could take care

of herself, could handle light housework, and could maintain the family finances, although she

needed help getting in and out of the shower.  The ALJ pointed to plaintiff's minimal work

history which he believed suggested she had no desire to work.  Additionally, the ALJ referred to

the emergency room physician who commented that plaintiff had provided contradictory

---

[1]In fact, I note that she reported to Dr. Englander in 2008 that she had experienced no change in vision.  Tr. 277.

information about seeing her primary care physician when she had actually been "fired" by the clinic.  Tr. 204.

Plaintiff challenges the ALJ's finding that no medical evidence supported plaintiff's testimony about swelling.  She first contends that the swelling was caused by her uncontrolled diabetes.  This is contrary to her testimony where she told the ALJ the swelling was due to her obesity.  Tr. 37.  Plaintiff also complains that her lack of insurance stopped her from getting care for her swelling.  Such a statement is inconsistent with the record as plaintiff had no trouble reporting to the emergency department once or twice a month for her ailments.  Indeed, it is appropriate to question plaintiff's credibility on the basis that she went to the emergency room for a stubbed toe but did not seek treatment for the "burn[ing] and hurt[ing]" from swelling in her legs, feet and hands.  Tr. 34; Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (unexplained lack of treatment for excessive pain is reasonable basis to question credibility).  Furthermore, during these visits, almost all of the physicians commented on the lack of edema in plaintiff's extremities.  Only one noted that plaintiff had "some mild edema in both arms." Tr. 247.  Such a finding would not substantiate plaintiff's testimony that her legs, feet and hands "burn and hurt" and that she "can't hold on to things and do things." Tr. 34.  The ALJ did not err.

Similarly, plaintiff challenges the ALJ's conclusion with regard to Dr. Goins's finding that plaintiff "might" be suffering from "mild" carpal tunnel syndrome.  Tr. 279.  The ALJ noted that no doctor indicated any functional limitations from this potential diagnosis.  Furthermore, the ALJ considered the carpal tunnel syndrome in crafting the RFC.  Again, the ALJ did not err.

Plaintiff's complaints about her right arm, which arose after she was given an injection in her arm, were also not supported by objective medical evidence.  Testing was normal and Dr.

Page 9 - OPINION AND ORDER

Englander assessed "some sort of radial nerve irritation without permanent injury." Tr. 278.[2]  As with the potential carpal tunnel syndrome in the right wrist, the ALJ considered limitations due to the nerve irritation in plaintiff's right arm.

Plaintiff also complains about the ALJ's suggestion that it was "unlikely that [plaintiff] gained 70 pounds over the last few months." Tr. 13.  The ALJ reported that plaintiff testified at the hearing in October that she weighed 340 pounds when a "few months" earlier she had weighed 270 pounds.  Tr. 13.  Plaintiff complains that the time between the hearing and the medical report in March containing her weight was actually seven months not a "few months." Plaintiff is correct, although I note she only gained 3 pounds between her February and March visits.  It is possible, however, that plaintiff gained ten pounds every month between her March doctor's appointment and the hearing.

Nevertheless, even if the ALJ erred in any of the respects suggested by plaintiff, the fact that the ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean that the ALJ's entire credibility assessment is improper.  Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2003).  As set forth above, the ALJ provided ample clear and convincing reasons supported by substantial evidence in the record to question plaintiff's credibility.

---

[2]I note, too, that plaintiff first complained about the right arm pain on 10/21/2007, but when she returned to the ER on 10/24/2007 to seek treatment for dropping the television on her foot, the treating physician noted, "No other injuries," and "No other complaints." Tr. 253. Plaintiff did not return to the ER about her right arm pain until 12/13/2007 and 12/14/2007.

II.      Residual Functional Capacity

Plaintiff argues that the ALJ erred in failing to set functional limitations to account for plaintiff's diabetes and obesity.  She also contends the ALJ erred in failing to include all of the functional limitations set forth by Sharon B. Eder, M.D.  Plaintiff also questions the basis for the ALJ's conclusion that plaintiff should avoid repetitious forceful gripping and twisting.

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant.  Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001).  If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.  Id.

The ALJ relied on the RFC report prepared by Dr. Eder, who specifically identified the impairments of diabetes and obesity in preparing her report.  Dr. Eder also noted sedentary work was called for due to plaintiff's morbid obesity.  Plaintiff neglects to cite any contradictory medical evidence in the record indicating that plaintiff's diabetes and obesity impose additional functional limitations not considered by Dr. Eder.

Plaintiff also complains that while the ALJ accepted Dr. Eder's RFC, he failed to explain why he concluded plaintiff could perform light work when Dr. Eder said plaintiff was limited to sedentary work.  This error is harmless since the ALJ considered only sedentary work for plaintiff.  Additionally, plaintiff asserts the ALJ erred in failing to obtain VE testimony about Dr. Eder's opinion that plaintiff could not be exposed to hazards.  Similarly, this error is harmless

since at least one of the jobs mentioned by the VE and accepted by the ALJ–telephone quotation clerk–does not involve any hazards.[3]

Finally, plaintiff contends the ALJ erred in crafting a limitation to account for plaintiff's wrist and arm pain when the limitation was not based on any evidence.  As an initial matter, at the time the ALJ questioned the VE, he did not have Dr. Englander's report.  The ALJ accepted plaintiff's testimony of a bilateral carpal tunnel diagnosis and imposed a limitation of no repetitious gripping or forceful twisting.  To illustrate the limitation, the ALJ described a person who "could use their hands to add things to a file or package things or move them," but who could not "open a peanut butter jar[.]"  Tr. 41.  Plaintiff fails to point to anything in the record that would indicate the ALJ should have imposed additional handling limitations.  Plaintiff is responsible for providing the evidence the ALJ uses to craft the RFC.  20 C.F.R. § 416.945(a)(3).  Furthermore, neither Dr. Englander nor Dr. Goins actually diagnosed carpal tunnel syndrome, the mild slowing of the median nerve appeared only on the right wrist, and neither doctor indicated any functional limitations.

The ALJ's RFC was supported by substantial evidence in the record and is free from legal error.

---

The fact that the VE testified the position of telephone quotation clerk was "like a phone sales type position" when the position more accurately requires the employee to report to customers "information posted on electronic quote board" and "relay[] calls to registered representative . . . as requested by customer" is harmless.  Plaintiff points to no additional functional limitations required by this job that would preclude her from performing it.

Page 12 - OPINION AND ORDER

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and

the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this _____23rd_____ day of April, 2010.


         /s/ Garr M. King
         Garr M. King
         United States District Judge